UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HECTOR LAPORTE,
a/k/a Orlando Espiritu Santo

                                               Petitioner,

           vs.                                    9:06-CV-1459
                                                     (GLS/ATB)

DALE ARTUS,
Superintendent,

                                         Respondent.

_____

HECTOR LAPORTE, Petitioner *Pro Se*
THOMAS B. LITSKY, Assistant Attorney General for Respondent

ANDREW T. BAXTER, Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

     This matter was originally referred to Magistrate Judge Gustave J. Di Bianco for Report and Recommendation by United States District Judge, Gary L. Sharpe, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  The case was re-assigned to me on January 4, 2010, upon Judge Di Bianco's retirement.

     Petitioner brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction rendered in the Schenectady County Court.  On January 22, 2002, petitioner pled guilty to First Degree Criminal Possession of a Controlled Substance.  Sentencing was adjourned on several occasions, in part so that the District Attorney could evaluate petitioner's cooperation with law enforcement authorities.  On approximately May 6, 2003, the County Court judge granted petitioner's original attorney's motion to withdraw and assigned new counsel.  In July of 2003, the Schenectady County Court denied

petitioner's motion to withdraw his plea, and on October 15, 2003, petitioner was sentenced to an indeterminate term of incarceration of fifteen years to life.

The Appellate Division affirmed petitioner's conviction. *People v. LaPorte*, 31 A.D.3d 800, 819 N.Y.S.2d 317 (3d Dep't, 2006).  The New York Court of Appeals denied leave to appeal on September 13, 2006.  *People v. LaPorte*, 7 N.Y.3d 849, 857 N.E.2d 74 (2006).  Petitioner filed two motions to vacate the conviction pursuant to N.Y. CRIM. PROC. LAW Section 440.10 in Schenectady County Court, and one application for a writ of *error coram nobis* in the Appellate Division.

On June 17, 2005, petitioner's counsel moved to re-sentence petitioner pursuant to the Drug Law Reform Act ("DLRA"). (State Court Record ("SCR") Ex. Q at ¶ 10).[1]  After a hearing on the motion, petitioner's application was denied. (SCR Ex. V).  On July 31, 2008, the Appellate Division, Third Department denied petitioner's appeal of the denial of his motion to re-sentence. *People v. LaPorte*, 53 A.D.3d 984, 863 N.Y.S.2d 113 (3d Dep't 2008).  Petitioner did not seek leave to appeal this decision.

Petitioner filed his original petition for federal habeas relief on December 4, 2006, raising only the claim that his plea was involuntary due to his attorney's

---

[1] Respondent submitted State Court Records on two separate occasions, in support of the opposition to the Petition (Dkt. No. 12) and in support of the opposition to the Amended Petition (noted on the docket sheet just after Dkt. No. 34).  Docket Number 12 includes Exhibits A through I, and the second submission includes Exhibits J through FF.  Since the exhibits are sequential, the court will not differentiate between the two submissions, and will simply refer to the exhibit letter.

conflict of interest.[2] (Dkt. No. 1).  On April 30, 2007, respondent filed his answer to the petition, together with a memorandum of law and the pertinent state court records. (Dkt. Nos. 10-12).  On May 11, 2007, petitioner moved to stay the petition so that he could return to state court to raise additional claims.[3] (Dkt. No. 13).  Magistrate Judge Di Bianco granted petitioner's motion on July 20, 2007 (Dkt. No. 14), and petitioner returned to state court to file a petition for writ of error coram nobis. (SCR Ex. J).

On June 11, 2008, petitioner moved to lift the stay and amend his petition. (Dkt. No. 23).  Judge Di Bianco granted petitioner's motion on September 10, 2008, and the amended petition, together with a memorandum of law were filed on the same date. (Dkt. Nos. 26, 27).  Petitioner filed a "traverse" on February 13, 2009, and respondent filed a supplemental memorandum of law,[4] together with additional state

---

[2] Many of the documents in this file have been sealed at respondent's request. (Dkt. No. 8).

[3] In the meantime, petitioner had already returned to state court to file two motions to vacate his conviction pursuant to N.Y. CRIM. PROC. LAW § 440.10.  The first motion was denied by the County Court on January 23, 2007 and did not raise any claims related to this petition. (SCR Ex. K at Ex. H).  Petitioner did not appeal the denial of the first motion.  Petitioner's second motion to vacate was denied by the County Court on May 25, 2007. (SCR Ex. K at Ex. I). Petitioner did not appeal the denial of his second motion to vacate.

[4] Respondent initially argued that petitioner's DRLA claim was unexhausted and procedurally barred.  (Dkt. No. 34, *Memo.* at 38-39).  In his Traverse, petitioner argued that under New York's appeals process as to the DRLA re-sentencings, the claim was, in fact, exhausted. (Dkt. No. 36 at 1-2 (*citing People v. Bautista*, 7 N.Y.3d 838, 823 N.Y.S. 2d 754 (2006)). Respondent's counsel advised the court by "Letter Brief" that it would withdraw the argument that the claim was unexhausted and procedurally defaulted.  (Dkt. No. 37).  The court then ordered respondent to file a supplemental memorandum of law addressing the issues raised in respondent's letter.  (*See* Text Order notation on docket at February 17, 2009 between Dkt. Nos. 38 and 39).  The supplemental memorandum of law (Dkt. No. 38) omits any argument that the DRLA claim is unexhausted.  Thus, respondent has withdrawn that argument, and the court need not address it further.

court records on March 9, 2009. (Dkt. No. 34, 38).  Petitioner raises three[5] grounds in the amended petition itself:

> 1. Petitioner's appellate counsel was ineffective because he failed to raise the issue of trial counsel's disqualification.[6] (Amended Petition ("Am. Pet.") at ¶ 12(a)) (Dkt. No. 27).

> 2. The trial court and the prosecutor violated the plea agreement at petitioner's motion for re-sentencing under the DRLA. (Am. Pet. at ¶ 12(b)).

> 3. Petitioner's guilty plea was involuntary because of trial counsel's conflict of interest.  (Am. Pet. at ¶ 12(c)).

For the following reasons, the court will recommend that the petition be denied and dismissed.[7]

## DISCUSSION

I.  **Facts and Procedural History**

In May 2001, the Schenectady Police Department executed a search warrant at 105 Victory Avenue, a multiple-family dwelling.  Petitioner, his wife, and two of their friends were arrested after police discovered 19 kilos, or approximately 45

---

[5] Petitioner continues to raise the claim that his plea was involuntary (claim no.3), and has added two claims to the petition.

[6] Although the "Memorandum" attached to the amended petition appears to raise a separate issue, alleging that the state court deprived petitioner of his constitutional right to counsel of his own choosing without an inquiry, a close reading of this argument shows that it is related to petitioner's claim that appellate counsel should have raised the issue on appeal. (Am. Pet. at 16-18).  Thus, the court will consider this argument to the extent that it relates to appellate counsel's failure to raise the claim.

[7] On May 7, 2010, petitioner filed a letter-motion requesting that the Court allow him to "purchase" a copy of his "plea cooperation agreement with the United States attorney's Office." (Dkt. No. 45, 46).  This court will address petitioner's letter-motion in conjunction with his ineffective assistance of counsel claims.

pounds, of cocaine in a car parked outside of 105 Victory Avenue.  Petitioner was indicted on one count of first degree criminal possession of a controlled substance, and one count of third degree criminal possession of a controlled substance.  (SCR, Ex. C at RA-1-2).

Petitioner pled guilty on January 22, 2002, but later decided that he wanted to withdraw his plea, based upon what he perceived to be a conflict of interest with his counsel.  According to petitioner's July 2003 motion to withdraw the plea, petitioner was originally represented by Attorney Mitch Kessler, but he retained Attorney Jorge Guttlein in August 2001, who represented petitioner "through and including May 7, 2003." (SCR, Ex. B at 68).  Attorney Guttlein represented petitioner at the plea hearing on January 22, 2002.  At the plea hearing, Attorney Guttlein made an application to keep the terms of petitioner's guilty plea out of the public record because a cooperation agreement would be included as part of the guilty plea.  (SCR, Ex. C at RA-38).  The court granted counsel's motion and conducted a closed proceeding.  (SCR, Ex. G).

In the closed  proceeding, the prosecutor and Attorney Guttlein discussed threats made against petitioner's life by an individual named Mr. Cedena. (SCR, Ex. G at 2).  The police reports show that the individual's full name is Jonathan Cedena. (SCR, Ex. B at R40).  The prosecutor and defense counsel stated that Mr. Cedena was a high-level narcotics trafficker, and that petitioner and Mr. Cedena were involved in a financial dispute that resulted in Mr. Cedena threatening petitioner's life. (SCR, Ex. G at 2-4).  The threats eventually caused petitioner to leave his home

in Georgia, and to relocate to upstate New York.  *Id*.

The prosecutor and Attorney Guttlein also discussed petitioner's potential cooperation and what information petitioner could provide under a cooperation agreement. (SCR, Ex. G at 7-9).  Possible information included facts about "Jonathan Cedena in Georgia and his drug operation," and about homicides committed by someone referred to as "the co-defendant."[8]  *Id*. at 7.  In exchange for petitioner's guilty plea to the first degree criminal possession of a controlled substance charge and viable cooperative information, the petitioner's maximum sentence would be 16 years to life. *Id*.  The prosecutor then stated that, depending upon the information that petitioner gave, the sentence recommendation "would be substantially lower than 16. . . ."  The judge granted Attorney Guttlein's application to keep the terms of the plea agreement confidential, and sealed the record of the proceeding.  (SCR, Ex. G at 16-17).

The court resumed the plea hearing in open court.  (SCR, Ex. C at RA-46).  On the record, the judge found that petitioner had legitimate safety concerns, and explained that "certain information" about the case would be kept confidential, but that the rest of the hearing would proceed in open court. (SCR, Ex. C at RA-47). The prosecutor then outlined the basic terms of the plea bargain, petitioner signed a Waiver of Appeal form, and the court proceeded with the plea colloquy.  *Id*. at RA-48-50.  Petitioner acknowledged that he was indicted under the name "Hector

---

[8] It is unclear whose "co-defendant" was being discussed because the drug operation mentioned was in Georgia, while the homicides, allegedly committed by "the co-defendant" apparently took place in Rochester, New York. (SCR Ex. G at 7).

LaPorte," but that his real name is Orlando Espiritu Santo.  *Id*. at RA-51.

During these proceedings, petitioner utilized the services of a Spanish

interpreter,[9] and pleaded guilty to one count of First Degree Criminal Possession of a

Controlled Substance in satisfaction of all of the charges in the indictment, as well as

a separate matter pending in Police Court.  (SCR, Ex. C at RA-53, RA-60).

Petitioner stated that he was satisfied with the services of his attorney, that no one

forced him to plead guilty, and that he understood his maximum sentence would be

16 years to life.  *Id*. at RA-54-55.  Petitioner admitted that on May 12, 2001, he

possessed more than four ounces of cocaine at 105 Victory Avenue.  *Id*. at RA-61.

The judge accepted petitioner's guilty plea.  *Id*. at RA-62.  The court set the

sentencing date for March 5, 2002.  *Id*. at RA-63.  Petitioner's sentencing was

adjourned[10] a number of times while petitioner fulfilled his agreement to cooperate

with prosecutors in various jurisdictions.

In April 2003, Attorney Guttlein filed a motion to be relieved as petitioner's

counsel.  (SCR, Ex. H at 2).  On April 24, 2003, at a hearing on the motion, Attorney

Guttlein stated that "[a]pproximately seven to eight months ago," he was retained by

an individual named Jose Manuel Horta-Correa.  *Id*. at 3.  At the time he was

retained, Attorney Guttlein knew that one of Mr. Horta-Correa's aliases was

Jonathan Cedena.  *Id*.  Attorney Guttlein asked petitioner if he knew Jose Manuel

---

[9] It is also clear, however, that Attorney Guttlein spoke Spanish and could communicate with petitioner. (SCR, Ex. C at RA-52).  The judge made specific reference to this fact at the hearing. *Id.*

[10]Some of the adjournments were also due to Attorney Guttlein's health problems and other scheduling conflicts.

Horta-Correa.  *Id*.  Petitioner stated that he did not.  *Id*.  Attorney Guttlein asked Jose Manuel Horta-Correa if he was really Jonathan Cedena, and Mr. Horta-Correa responded, "no."  *Id*.  However, Mr. Horta-Correa stated that he knew petitioner "because of Georgia, but he had no business dealings with him, and he just thought he was a nut."  *Id*.  Attorney Guttlein then represented both men from the summer of 2002 through April 2003.

Attorney Guttlein stated that approximately four or five days before the April 2003 hearing on the motion to withdraw, he received a letter from the "Southern District," presumably the United States Attorney's Office for the Southern District of New York, stating Mr. Horta-Correa was also Mr. Cedena.  (SCR, Ex. H at 3-4).  Attorney Guttlein advised the court that he expected he would be relieved as counsel for Mr. Horta-Correa/Mr. Cedena in the Southern District, and that he also sought to be relieved as counsel for petitioner. *Id*.

Attorney Guttlein argued that he should be relieved as counsel because of a conflict of interest between petitioner and Mr. Horta-Correa/Mr. Cedena. (SCR, Ex. H at 3-6).  The court agreed that a conflict of interest existed, but questioned whether the conflict required Attorney Guttlein's withdrawal.  *Id*. at 6.  Attorney Guttlein stated that his representation of petitioner was not at all affected by his separate representation of both individuals up until that point. *Id*. at 12.  However, Attorney Guttlein argued that because petitioner had cooperated against Mr. Horta-Correa/Mr. Cedena, and because Attorney Guttlein had information about Mr. Horta-Correa/Mr. Cedena, the attorney could not continue to represent either of the two men.  *Id*. at 7,

11-13.

The state prosecutor argued that since the plea agreement was made long before Attorney Guttlein represented Mr. Horta-Correa/Mr. Cedena, petitioner had suffered "no detriment." *Id*. at 9.  The prosecutor stated that there had been discussions between the attorneys regarding the possibility of replacing the original plea agreement with a plea to a lesser charge and a new sentence of twelve and a half years to life, based upon petitioner's substantial cooperation up to that point.  *Id*. The court denied Attorney Guttlein's application to be relieved as counsel, and expressed some frustration with the delays in petitioner's case.  *Id*. at 21, 13-18.  The court scheduled a follow-up hearing for May 12, 2003.  *Id*. at 21.  However, on May 7, 2003, the County Court judge granted Attorney Guttlein's renewed application to be relieved as counsel.  (SCR, Ex. I).  The court assigned Attorney Mansion to represent petitioner.  *Id*.

> In July 2003, Attorney Mansion moved to withdraw petitioner's guilty plea
>
> upon the ground of ineffective assistance of counsel consisting of, among other things, former counsel's willful, wanton, negligent and/or intentional misleading act(s) directed toward the defendant and the Schenectady County Court and also including former counsel's known conflict on interest in his continued representation of the defendant and of a co-defendant when an actual conflict of interest existed.

(SCR, Ex. B at R66).  In his affidavit, Attorney Mansion also claimed that Attorney Guttlein told petitioner that his continued cooperation against Mr. Cedena[11] would

---

[11]Attorney Mansion spells Mr. Cedena's name "Cedeno."  Included in Attorney Mansion's papers is a letter from the United States Attorney's Office for the Southern District of New York that also spells the individual's surname as "Cedeno."  For the purposes of continuity, this court will refer to this individual as "Cedena".

9

result in a reduction of the previously agreed sentence of 15-life to "**time served**." *Id*. at R69 (emphasis in original).

On July 31, 2003, the court denied petitioner's application in a written opinion. *Id.* at R86-90.  The judge stated that this was not a case in which counsel was representing a co-defendant who would be testifying against petitioner. *Id.* at R89.  Since petitioner would be testifying against Mr. Horta-Correa/Mr. Cedena in an unrelated case, and because Attorney Guttlein did not represent Mr. Horta-Correa/Mr. Cedena at the time of petitioner's guilty plea, "the conflict of interest did not operate to prejudice [petitioner]."  *Id*. at R89.  The court also found it was not credible that Mr. Guttlein told petitioner that his cooperation would result in a sentence of "time served," because such a sentence would be contrary to what was discussed in court and would be in violation of the New York Penal Law which required a minimum sentence of 15 years for a conviction of First Degree Criminal Possession of a Controlled Substance. *Id.* at R89-90.

On October 15, 2003, the court conducted a sentencing hearing. (SCR, Ex. A at A41-A63).  The court noted that petitioner had rejected the new plea agreement that would have required him to withdraw his plea to the A-I felony and plead guilty to an A-II felony, so that he could be sentenced to twelve and a half years to life incarceration.  *Id*. at A46.  The prosecutor confirmed that the offer was still on the table. *Id*. at A46-47.  Attorney Mansion, petitioner's new attorney, explained that his opinion was

> that Mr. LaPorte should withdraw his plea to an A-1 and plead down to an A-2.  Mr. LaPorte has advised me that he's not going to do that, he

refuses, so that puts me in the position, the Court and the People in the
position that the A-1 felony plea must stand . . . .

(SCR, Ex. A at A50).  Attorney Mansion also stated that

> I've advised Mr. LaPorte accordingly, [and] this decision is made freely
> and voluntarily and on his own volition.  Mr. LaPorte has directed that
> he will not withdraw his plea to the A-1 and plead down to an A-2,
> again asserting the fact that or the belief that my application for the
> withdraw [sic] of the plea should have been granted.

(SCR, Ex. A at A50-A51).  The court granted Attorney Mansion permission to read a

statement from petitioner into the record.  The statement included allegations that a

variety of petitioner's constitutional rights were violated, and argued that because the

Southern District case against Mr. Horta-Correa/Mr. Cedeno had been dismissed,

"the promises leniency [sic] are to be revoked for my consideration [sic]."  *Id*. at

A52.  Petitioner requested that he be tried on the charges.  *Id*. at A52-A53.

The prosecutor stated that all of petitioner's cooperation had been accounted

for, and that "[t]he significant cooperation that Mr. LaPorte provided, if it could be

called significant, is reflected in our desire to allow him to plead to the A-2 felony."

(SCR, Ex. A at A54).  The court asked petitioner to confirm that he would not

withdraw his guilty plea and plead guilty to the Class A-II felony.  *Id*. at A57.

Petitioner responded, "[t]his is an illegal sentence.  Absolutely."  *Id*.  After some

discussion, the prosecutor agreed to a reduction of the sentence to from sixteen years

to life[12] to fifteen years to life, the minimum legal sentence for an A-I felony.  *Id*. at

A58-61.  The court then proceeded to sentence petitioner to an indeterminate term of

---

[12] The original plea agreement provided that petitioner would be sentenced to sixteen
years to life.

incarceration of fifteen years to life. *Id*. at A61-A62.

## II.   <u>Scope of Review</u>

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), claims adjudicated on the merits in state court will stand

> unless the adjudication . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d) (2007).  The Second Circuit describes this as a deferential review, and states that

> the necessary predicate to this deferential review is, of course, that petitioner's federal claim has been adjudicated on the merits by the state court.  If a state court has not adjudicated the claim on the merits, we apply the pre-AEDPA standards, and review *de novo* the state court disposition of the petitioner's federal constitutional claims.

*Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001)).

"[A] state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (internal citations omitted).  In order to determine whether a state court has disposed of a claim on the merits, the following factors are considered: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the

state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." *Aparicio*, 269 F.3d at 93 (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001)).

> In this regard, we have given a broad reading to state court dispositions, noting that "a state court need only dispose of the petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." *Aparicio*, 269 F.3d at 93-94 (citing *Sellan*, 261 F.3d at 312). Furthermore, an issue raised may be considered adjudicated "on the merits" for AEDPA purposes even when the state court does not specifically mention the claim but uses general language referable to the merits. *Aparicio*, 269 F.3d at 94; *Sellan*, 261 F.3d at 312-14.

*Norde*, 294 F.3d at 410.

A state decision is "contrary to clearly established Federal law if it 'contradicts the governing law' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the Supreme Court." *Ramirez v. Miller*, 04 Civ. 2967, 2005 U.S. Dist. LEXIS 4306, *10 (S.D.N.Y. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). The "contrary to" standard requires not just an incorrect application of the law, but an *unreasonable* application. *Id*. "Objective unreasonableness includes an unreasonable refusal 'to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." *Id*. (quoting *Kennaugh v. Miller*, 289 F.3d 36, 45 and n.2 (2d Cir. 2002)).

Pursuant to 28 U.S.C. § 2254 (e)(1), the "determination of a factual issue made

by a state court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. 2254 (e)(1) (2007).  *See Sorto v. Herbert*, 364 F. Supp. 2d 240, 242 (E.D.N.Y., 2004).  The Supreme Court held that "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III.   Ineffective Counsel

Petitioner's claims that his trial counsel was ineffective and that his guilty plea was involuntary are intertwined.  Petitioner asserts that his guilty plea in January 2002 was not knowing and voluntary because of Attorney Guttlein's conflict of interest, causing his representation to be "ineffective." (Am. Pet. at ¶ 12(c)). Petitioner also makes the seemingly inconsistent claim that the trial court erred when it "disqualified" petitioner's retained[13] trial counsel, because Attorney Guttlein's conflict of interest was not serious.  (Am. Pet. at 16-18).  Petitioner further argues that appellate counsel was ineffective for failing to challenge the disqualification of trial counsel on direct appeal. (Am. Pet. at  ¶ 12(a)).

### A.    Involuntary Plea/Ineffective Trial Counsel

Petitioner claims that his "plea was not knowing or voluntary because of

---

[13] Petitioner was initially represented by appointed counsel, but subsequently retained Attorney Guttlein on August 24, 2001. (SCR Ex. A - Petitioner's Brief on Appeal at 1).  After Attorney Guttlein withdrew, petitioner was once again represented by appointed counsel, Michael Mansion. (SCR Ex. I - Letter from County Court Judge to Mr. Guttlein, granting his motion to withdraw).

counsel's conflict of interests." (Am. Pet. at ¶ 12(c)). Petitioner does not allege that he was coerced into pleading guilty. Rather, petitioner alleges that Attorney Guttlein's concurrent representation of Mr. Horta-Correa/Mr. Cedena presented a conflict of interest that somehow interfered with petitioner's guilty plea, even though Attorney Guttlein was not retained by the other client until well after petitioner's plea.

### 1.     State Court's Decision

In this case, the Appellate Division stated that the County Court did not abuse its discretion in denying the petitioner's application to withdraw his guilty plea. *People v. LaPorte*, 31 A.D.3d at 800-01. The court found that his attorney had no conflict of interest when petitioner pled guilty, thus, no conflict "operated on the [attorney's] representation." *Id.* at 801. The Appellate Division also found that petitioner's claim that he pled guilty because his attorney promised him a sentence of "time served," was "belied by the record." *Id.* The court concluded that "defendant was afforded meaningful representation at the time of his plea and entered his guilty plea voluntarily, knowingly, and intelligently." *Id.*

The Appellate Division's decision was clearly "on the merits" of the petitioner's claim, thus, this court must apply the deferential AEDPA standard of review. This court finds that the Appellate Division's decision was not contrary to, or an unreasonable application of, Supreme Court precedent.

### 2.     Supreme Court Precedent

"The longstanding test for determining the validity of a guilty plea is 'whether

15

the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 272 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Parke v. Raley*, 506 U.S. 20 (1992) (plea is valid when it is knowingly and voluntarily made); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be intelligently and voluntarily entered). A knowing plea is entered "with understanding of the nature of the charge and the consequences of the plea." *Santobello v. New York*, 404 U.S. 257, 261 n. 1 (1971); *see also Hanson v. Phillips*, 442 F.3d 789, 798 (2d Cir. 2006).

One of the bases for petitioner's claim that his plea was involuntary is that counsel was ineffective due to a conflict of interest. The general standard for ineffective assistance of counsel was articulated in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). This test requires an affirmative showing that counsel's performance fell below an objective standard of reasonableness and that prejudice resulted because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. *See also Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

The Sixth Amendment requires a criminal defendant to have "conflict free" counsel in order for counsel to be effective. *Woods v. Georgia*, 450 U.S. 261, 271 (1981). Courts have recognized different types of conflicts: (1) a *per se* conflict, (2) an actual conflict, and (3) a potential conflict. *See United States v. Doe # 1*, 272 F.3d 116, 125 (2d Cir. 2001), *cert. denied sub nom. Findley v. United States*, 537 U.S. 851

(2002).  A *per se* conflict requires automatic reversal without a showing of prejudice, and only occurs if the attorney is not admitted to practice law or has been implicated in the same crime for which the defendant was being tried. *Id.*

An "actual conflict" occurs when, during the course of the representation, the attorney's and the defendant's interest diverge with respect to a material factual or legal issue or to a course of action. *Cuyler v. Sullivan*, 446 U.S. 335, 352 n.3 (1980). An exception to the general *Strickland* rule occurs when a petitioner claims that his attorney had an "actual conflict of interest," in which the lawyer "actively represented conflicting interests." *Cuyler v. Sullivan*, 446 U.S. at 348, *cited in Tueros v. Greiner*, 343 F.3d 587, 591-92 (2d Cir. 2003).  In such a case, petitioner need only demonstrate that the *actual conflict* "adversely affected his lawyer's performance" in order to establish a violation of the Sixth Amendment. *Id.*

Finally, a "potential conflict" situation, is one in which the interests of defendants in a case of multiple representation may diverge at some point so as to place the attorney under inconsistent duties. *Cuyler*, 446 U.S. at 356 n.3.  Where there is a potential conflict, the *Strickland* standard applies, requiring the defendant to show both deficient performance and prejudice.

In *Tueros*, the Second Circuit distinguished the two standards, stating that *Sullivan* "grants the defendant a 'limited[] presumption of prejudice.'" 343 F.3d at 592 (alteration in original) (quoting *Strickland* 466 U.S. at 692).  The court began its discussion by stating that the case presented the question of which standard to apply, but recognized that, under the AEDPA, the issue still was whether the state court

unreasonably applied clearly established precedent in order to determine that the defendant's counsel did not have an "actual conflict of interest." 343 F.3d at 592. With the above standards in mind, the court turns to an analysis of the issues in this case.

### 3.      Application

### (i)      Conflict of Interest

In April 2003, Attorney Guttlein told the court that he had been retained by Mr. Horta-Correa/Mr. Cedena's family seven to eight months prior.  Therefore, at the earliest, Attorney Guttlein began his representation of Mr. Horta-Correa/Mr. Cedena in August 2002.  Petitioner pleaded guilty ***approximately seven months earlier***, in January 2002.  Petitioner does not claim that Attorney Guttlein's representation was deficient in any way during the time period prior to and including petitioner's guilty plea in January 2002.  The court cannot find that Attorney Guttlein's dual representation of petitioner and Mr. Horta-Correa/Mr. Cedena, beginning in *August of 2002*, had any effect on petitioner's guilty plea in *January 2002.*

There was no conflict of interest, actual or otherwise, at the time that petitioner pled guilty.  There is no indication that Attorney Guttlein began representing Mr. Horta-Correa/Mr. Cedena any time prior to the date that he claimed to have initiated the representation, and initially, it was unclear that Mr. Horta-Correa was, in fact, Mr. Cedena.  Any conflict of interest that may have come into existence in late summer 2002, after Mr. Guttlein was retained by Cedena, simply could not have had ***any*** impact on petitioner's ability to make a knowing and intelligent decision to

plead guilty in *January 2002*.  Thus, the Appellate Division's decision regarding the conflict of interest was not based upon an unreasonable application of Supreme Court precedent, regardless of whether the standard used was based upon *Strickland* or *Cuyler*.  Nor was the Appellate Division's decision based on an unreasonable determination of the facts.

### (ii)   Misinformation Regarding Possible Sentence

As the Appellate Division noted, petitioner's claim[14] that he may have pled guilty because he thought he was going to get "time served" is totally contrary to the transcripts of all the proceedings in this case.  Petitioner was clearly told that he would receive sixteen years to life,[15] and he pled guilty, stating that there had been no other promises made to him regarding the sentence.  In petitioner's March *2007* motion to vacate his conviction, petitioner alleged, for the first time, that he entered into a cooperation agreement with an Assistant United States Attorney in September 2001 "in return for a promised lenient sentence of time served for the pending charges under indictment number 401-17."[16]  (SCR, Ex. DD at 6).  Petitioner's indictment number in *state* court was 401-17.  While petitioner may have agreed to

---

[14] It is unclear whether petitioner is making this argument in his petition, however, since the Appellate Division addressed the merits of this claim, this court will consider it.

[15] His sentence was later reduced to fifteen to life after he refused to plead guilty to the A-2 felony that would have allowed the trial judge to sentence petitioner to 12 ½ to life. (SCR, Ex. C at RA 101-03).

[16] This may be the "plea cooperation agreement," a copy of which petitioner sought to obtain through his recent "motion."  (Dkt. No. 45).  The court would point out that petitioner cannot be referring to a "plea" agreement because he did not plead guilty in Federal Court.  His "cooperation" was with the United States Attorney in the *Southern* District of New York on a prosecution unrelated to his prosecution in Schenectady County.

*cooperate* with federal authorities, it is inconceivable that the federal prosecutor in the Southern District of New York promised petitioner "time served" on unrelated state charges.[17]  Thus, it is unnecessary to obtain the petitioner's cooperation agreement in the Southern District of New York, and petitioner's recent request to obtain this alleged "agreement" are denied.[18] (Dkt. Nos. 45, 46).

In petitioner's 2003 motion to withdraw his plea, he submitted a letter from Mr. Guttlein stating that "[o]bviously you have a chance to receive a sentence of time served if your cooperation is satisfactory and you meet the conditions of the cooperation agreement." (SCR Ex. C at RA-25).  However, in denying the motion to withdraw the plea, the County Court judge cited another part of Attorney Guttlein's letter, wherein the attorney stated that he "never guaranteed" the petitioner a "result." *Id.*  In petitioner's direct appeal, the Appellate Division pointed out that regardless of petitioner's claim that Attorney Guttlein "advised [petitioner] on numerous occasions that as a result of his cooperation his sentence would be reduced to time served, defendant does not allege that counsel made such a representation to him *prior to the plea*." 31 A.D.3d at 801 (emphasis added).  Attorney Guttlein's letter to petitioner was dated May 5, 2003, long after petitioner's January 2002 plea. (SCR Ex. Z at Ex. 4).

---

[17] This court would also point out that petitioner's 2007 section 440.10 motion was the first time that he mentioned that the alleged "cooperation agreement" with the federal prosecutor was where he was "promised" time-served.

[18] Although the court has assumed that petitioner has asked "purchase" a copy of this document because he wishes to use it in this action. (Dkt. Nos. 45, 46).  However, if he simply wishes to obtain a copy of an agreement with the Assistant U.S. Attorney in the Southern District, he should write to the Assistant U.S. Attorney in question.

The Appellate Division's decision regarding petitioner's plea and the effectiveness of his counsel is well-supported by the facts and the law.  The general *Strickland* standard would apply to counsel's advice regarding petitioner's potential sentence.  There is no indiction that counsel gave petitioner anything but reasonable advice and assistance, and there is no indication that the petitioner's plea was anything but voluntary, knowing, and intelligent.  Petitioner's claim that his plea was involuntary because of a purported conflict of interest on the part of his lawyer should be dismissed.

### B.    Appellate Counsel

Petitioner claims that his appellate counsel was ineffective due to his failure to raise the issue of Attorney Guttlein's improper disqualification.  Petitioner argues that the County Court held a sealed proceeding outside of his presence on Attorney Guttlein's motion to withdraw as counsel, and that when the proceeding resumed in open court with petitioner present, "no interpreter was available so the court could not inquire of petitioner about counsel's application for disqualification."[19] (Am. Pet. at ¶ 12(a)).  Though the trial court initially denied the motion, the court eventually allowed Attorney Guttlein to withdraw.  Petitioner's claim is that on direct appeal, appellate counsel should have argued that "the court erred when it removed [petitioner's] counsel without making an appropriate inquiry, and when it removed

---

[19] Apparently, petitioner contends that if he had been consulted, he would have "waived" any potential conflict.

petitioner's counsel of choice without a serious potential conflict of interest."[20]  *Id.*

### 1.    State Court Decision

When petitioner raised the issue of ineffective assistance of appellate counsel in an application for a writ of *error coram nobis*,[21] the Appellate Division denied the motion without opinion.  *People v. LaPorte*, Case # 101263, Decision and Order on Motion dated Oct. 3, 2007.  The Court of Appeals denied leave to appeal on January 9, 2008.  *People v. LaPorte*, 9 N.Y. 3d 1035, 881 N.E. 2d 1207 (2008).  A denial "without opinion" qualifies as an "adjudication on the merits" for purposes of the AEDPA. *Scott v. Fisher*, 652 F. Supp. 2d 380, 407 (W.D.N.Y. 2009) (citing *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001)).  Thus, the deferential AEDPA standard applies, and the question before this court is whether the Appellate Division denial of petitioner's *coram nobis* application was an unreasonable application of, or contrary to, well-established Supreme Court precedent.

### 2.    Supreme Court Precedent

A defendant has the right to effective counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).  The Second Circuit has held that, although *Strickland* was created in the context of trial counsel, its standard applies equally to claims of

---

[20]Petitioner comments that "[a]ppellate counsel should have raised this claim in lieu of the impuissant claim raised."  Appellate counsel raised two issues on direct appeal related to whether or not petitioner's guilty plea was made knowingly and voluntarily.  The court notes that petitioner himself makes the same "impuissant" argument to this court, which the court has already found meritless.

[21] The court notes that generally, an application for a writ of *error coram nobis* is the proper method to raise a claim that appellate counsel was ineffective.  *People v. Bachert*, 69 N.Y.2d 593, 509 N.E.2d 318 (1987).

ineffective assistance of appellate counsel. *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001).  As stated above, to establish ineffective assistance of counsel, the petitioner must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.  In making this determination, the court must presume that counsel's conduct falls within the wide range of reasonable professional assistance and must take care to "'eliminate the distorting effects of hindsight.'"*Aparicio*, 269 F.3d at 95 (quoting *Strickland*, 466 U.S. at 689).  In the appellate context, counsel is not required to advance every nonfrivolous argument that could be made. *Aparicio*, 269 F.3d at 95 (citing *Evitts*, 469 U.S. at 394; *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).  "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).  Only when the omitted issues are "clearly stronger" than the ones presented, is the presumption of effective assistance overcome. *Id.* The court must determine whether this petitioner's appellate counsel missed a "significant and obvious issue" when he failed to argue that petitioner's Sixth Amendment rights were violated when the trial court allowed petitioner's counsel to withdraw.

The Supreme Court has held that the government must "honor" a defendant's Sixth Amendment right to counsel of his choice. *Maine v. Moulton*, 474 U.S. 159, 170-71 (1985).  The Second Circuit held that "[t]his is intuitive: the right to counsel

in an adversarial legal system would mean little if defense counsel could be controlled by the government or vetoed without good reason." *United States v. Stein*, 541 F.3d 130, 154 (2d Cir. 2008).

The individual's right to counsel includes "a correlative right to representation that is ***free from conflicts of interest***,"[22] and the defendant's preference must be balanced against considerations such as the "'need to preserve the highest ethical standards of professional responsibility.'" *Fernandez v. Lantz*, No. 3:09-CV-1339, 2010 U.S. Dist. LEXIS 41166, *15-16 (D. Conn. April 27, 2010) (citation omitted). Although there are some circumstances where an actual conflict may be waived,[23] where the court justifiably finds an "actual conflict" of interest, it may "decline a proffer of waiver." *Wheat v. United States*, 486 U.S. 153, 162 (1988).

### 3.    Application

The court must first point out that on appeal, appellate counsel raised the argument that petitioner's plea was involuntary because his counsel had a conflict of interest. (SCR Ex. A at 4-7).  Petitioner raises the same claim as Point III of his amended petition. (Dkt. No. 27 at 9).  It would have been completely inconsistent for appellate counsel to argue that petitioner's plea was involuntary because of trial counsel's conflict of interest, and at the same time, argue that the court erred in allowing trial counsel to withdraw because that same conflict of interest was not "serious."  Under the circumstances, appellate counsel made a sound tactical decision

---

[22] *Woods v. Georgia*, 450 U.S. 261, 271 (1981) (emphasis added).

[23] *See United States v. Williams*, 372 F.3d 96, 107-09 (2d Cir. 2004) (depending on the circumstances, both actual and potential conflicts may be waived).

to choose only one of these inconsistent positions to raise on appeal. *See McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) (actions or omissions by counsel that might be considered sound tactical strategies do not constitute ineffective assistance) (citing *Strickland*, 466 U.S. at 689).

Appellate counsel's choice allowed him to attack the voluntariness of petitioner's plea, a claim that was clearly preserved by new trial counsel's motion to withdraw the plea. *See* N.Y. CRIM. PROC. LAW § 470.05(2) (providing that a question of law is presented when "a protest thereto was registered, by the party claiming error at the time of such ruling . . . or ant any subsequent time when the court had an opportunity of effectively changing the same."). If appellate counsel had been successful at attacking the voluntariness of the plea, petitioner's conviction would have been reversed, and petitioner would have been returned to pre-plea status. If appellate counsel had been successful on petitioner's *proposed* claim,[24] it would not have changed the voluntariness of the plea, and petitioner would have simply been in a position to be re-sentenced.[25]

---

[24] Although this court need not reach this issue because the Appellate Division reasonably could have found no prejudice from counsel's alleged inadequacy, the chances of success on the proposed claim were non-existent. The Supreme Court has stated that the Sixth Amendment inquiry is designed to protect the "adversarial process, not . . . the accused's relationship with his lawyer as such." *United States v. Cronic*, 466 U.S. 648, 657 n. 21 (1984). The presiding court needed only to ensure that petitioner had an "effective advocate." *Wheat*, 486 U.S. at 160. New counsel was an effective advocate for petitioner. Petitioner's original counsel had already negotiated the plea and both possible sentences before the alleged conflict arose. New counsel did what he could by moving to withdraw the plea so as to preserve whatever claim petitioner might have. He was also an effective advocate at sentencing even though petitioner refused to take his advice to re-plead so that petitioner could receive a lesser sentence.

[25] It is unclear whether the Appellate Division would have even considered such a claim "preserved" since petitioner never challenged counsel's motion to withdraw after it was granted. In fact, at that time, new counsel was making the motion to withdraw the plea based upon the

Since the plea would still have been valid, and petitioner pled guilty to an A-1 felony, he would still have been re-sentenced to 15 years to life, the minimum sentence for the crime to which he pled guilty.[26]  Tthere would have been *no benefit* to petitioner if appellate counsel raised the claim that Attorney Guttlein's motion to withdraw should have been denied or that petitioner was not properly consulted about his willingness to waive whatever conflict arose after petitioner pled guilty. Thus, it would have been a reasonable application of *Strickland* for the Appellate Division to find, not only that appellate counsel's performance did not fall below an objective standard of reasonableness, but also that there was no prejudice to petitioner.  This is not a situation, as Second Circuit stated in *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998), where the attorney overlooked "a sure winner" and focused on clearly losing arguments.[27]  *Clark v. Stinson*, 214 F.3d at 328 (quoting

---

alleged conflict.  Trial counsel certainly could not credibly have made **both** arguments. Appellate counsel is not ineffective for failure to raise an unpreserved claim. *Aparicio*, 269 F.3d at 96; *Britto v. Phillips*, 485 F. Supp. 2d 357. 361 (S.D.N.Y. 2007) (appellate counsel was not ineffective for failing to raise a waived and futile argument on appeal).  This is true even though an attorney may ask the Appellate Division to review an unpreserved issue in the interests of justice. *See* N.Y. CRIM. PROC. LAW § 470.15(6)(a) (providing for interests of justice review of unpreserved claims).

[26] Petitioner gave up his chance to withdraw his plea to the A-1 felony and re-plead to an A-II felony so he could have been sentenced to a term of 12 ½ years to life imprisonment. Petitioner cannot now claim that he was so distraught by the replacement of his counsel that he could not think properly at the sentencing when his new attorney was urging him to take the lesser plea.  It is clear that even at the time of Attorney Guttlein's first motion to withdraw, he had already discussed the new offer with petitioner.  During the hearing on his motion to withdraw, Attorney Guttlein explained to the court that he discussed "the broad parameters of the basis of [his] application" with petitioner, and at that time, the court afforded counsel and petitioner time to talk about the prosecutor's "amended offer, which is favorable – off the record." (SCR Ex. H at 17-19).

[27] Neither of petitioner's claims regarding the conflict of interest were "sure winners," and appellate counsel made reasonable tactical decisions with respect to petitioner's possible claims.

*Jackson v. Leonardo, supra*).

Even if this court were to find that petitioner's proposed claim was non-frivolous, appellate counsel was not obligated to raise every non-frivolous claim on appeal. *Aparicio*, 269 F.3d at 95.  Thus, the Appellate Division did not unreasonably apply Supreme Court precedent in denying petitioner's application for *coram nobis* relief.   Petitioner's claim of ineffective assistance of his appellate counsel should be denied.

## IV.   **Plea Agreement and Sentence**

Petitioner claims that his 2002 plea agreement was violated because when petitioner moved for re-sentencing under the DRLA, the prosecutor recommended, and the court "offered" a greater sentence than the one petitioner was serving. (Am. Pet. at ¶ 12(b)).  Petitioner is still serving his original sentence.

The DLRA replaced New York's indeterminate sentencing scheme for drug offenses with a determinate sentencing system and reduced mandatory minimum sentences for nonviolent drug offenders.  See *People v. Utsey*, 7 N.Y.3d 398, 855 N.E.2d 791 (2006); N.Y. Penal Law § 70.71 (L. 2004, Ch. 738, § 6 (eff. Jan. 13, 2005)).  The law permits individuals convicted of class A-I and A-II drug felonies prior to the effective date of the law to petition for re-sentencing.  *People v. Pauly*, 21 A.D.3d 595, 799 N.Y.S.2d 841 (3rd Dep't, 2005).

### A.   **State Court Decision**

In June 2005, petitioner filed his petition for re-sentencing in Schenectady County Court on the basis of the new law.  (SCR, Ex. Q).  The District Attorney's

office responded to the petition, and stated that "[t]he People consent to re-sentencing of the Defendant and recommend that a sentence of 17 and a half years be imposed."  (SCR, Ex. R at 1).  The County Court conducted several hearings on the matter, and eventually held

> that substantial justice dictates that defendant not benefit from the new statute and his re-sentence application be denied.  Although the application is denied, the new statute requires that this Court state the sentence that would be imposed "in the event of a re-sentence and shall enter an order to that effect".  Consequently, in the event of a re-sentence, this court would impose the following re-sentence: a 17 ½ year determinate sentence with 5 years post-release supervision.

*People v. LaPorte*, Order by Schenectady County Court (Drago, J.) March 27, 2006 (SCR, Ex. U at 5).  Contrary to petitioner's assertion, the court did not "offer" a new sentence of 17 ½ years, but in fact found only that petitioner should not benefit from the DRLA. *Id*.  The court was required by the DRLA to state its findings on the record.  The state court decision is on the merits, thus, to the extent that such a claim is cognizable, the AEDPA standard applies.

## B.   Supreme Court Precedent

Petitioner may be making the claim that his sentence is harsh and excessive in light of the proceedings at his original sentencing, and the 2006 denial of his petition for re-sentencing.  The Eighth Amendment forbids only ***extreme*** sentences which are "grossly disproportionate" to the crime of conviction.  *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003).  The Second Circuit has consistently held that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).  *See also*, *Ewing*

*v. California*, 538 U.S. 11, 25 (2003); *Mendoza v. Miller*, 9:04-CV-1270 (LEK), 2008 U.S. Dist. LEXIS 60176, *12-13 (N.D.N.Y. Aug. 6, 2008).

### C. Application

In this case, petitioner's sentence is at the low end of the range of sentences for A-I felonies. Thus, petitioner has not presented a cognizable constitutional claim that his sentence was harsh and excessive under the Eighth Amendment.

Notwithstanding that petitioner's sentencing claim is not cognizable, he is also incorrect that the plea agreement was breached by the court or the prosecutor. The plea agreement entered into at petitioner's guilty plea in January 2002 is, in fact, still in force, and petitioner continues to serve a sentence that is within both the agreed-upon range and the statutory range of incarceration. Petitioner agreed to 16 years to life at his plea hearing, and was ultimately given a sentence of 15 years to life when he refused to re-plead to an A-II felony in order to be sentenced to 12½ years to life.

Petitioner's failure to take advantage of the opportunity in 2003 to plead guilty to a lesser charge, and serve a lower sentence is unfortunate. However, this court cannot find that the plea agreement was breached by the court or the prosecutor. Petitioner has alleged at various times that he received incorrect information about a sentence as low as "time served" from Attorney Guttlein after the entry of the plea. Even in the Amended Petition, petitioner stated that he was "confused" at the sentencing hearing and "distraught" that he was no longer represented by his retained counsel. (Am. Pet. at 17). Petitioner has not made any specific constitutional claims about any deficiencies at his sentencing hearing.

This court has already found that petitioner pled guilty knowingly and voluntarily with adequate representation by counsel. Petitioner has not alleged that Attorney Mansion was ineffective at the sentencing hearing, or that the sentence he is **currently serving** is outside of the plea agreement or outside the range of sentencing for his particular conviction. The discussion of a higher sentence did not prejudice petitioner because it was never imposed, and he is still serving a sentence lower than the one he agreed to in January 2002. Petitioner's claim that his sentence was unconstitutional should be dismissed.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that petitioner's motion requesting a copy of his "plea/cooperation" agreement (Dkt. No. 45, 46) is **DENIED**, and it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**. Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Date: May 21, 2010

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**